# FOR PUBLICATION



FILED
Sep 29 2014, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**BRYAN L. GOOD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**CARL A. GRECI**
**ANGELA KELVER HALL**
Faegre Baker Daniels, LLP
South Bend, Indiana

**SARAH E. SHARP**
Faegre Baker Daniels, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRYAN L. GOOD,                           )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                         )   No. 20A03-1401-MF-14
                                         )
WELLS FARGO BANK, NA.,                   )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1211-MF-896

**September 29, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Bryan Good appeals the trial court's grant of partial summary judgment in favor of Wells Fargo Bank, N.A., ("Wells Fargo") and the subsequent judgment of foreclosure. We reverse and remand.

## Issue

Good raises seven issues. We address the dispositive issue, which we restate as whether the trial court properly granted partial summary judgment for Wells Fargo on the basis that Wells Fargo was entitled to enforce the promissory note executed by Good.

## Facts

On March 14, 2008, Good purchased real estate in Elkhart. Good executed an electronic promissory note ("the Note") in favor of Synergy Mortgage Group, Inc., ("Synergy").[1] The Note included the following term:

> **11. ISSUANCE OF TRANSFERABLE RECORD; IDENTIFICATON OF NOTE HOLDER; CONVERSION FROM ELECTRONIC NOTE TO PAPER-BASED NOTE[2]**
>
> * * * * *
>
> (B) Except as indicated in Sections 11(D) and (E) below, the identity of the Note Holder and any person to whom this

---

[1] Throughout this opinion, we refer to the paper copy of the electronic note designated by Wells Fargo. In his brief, Good claims to have obtained a copy of a paper note during discovery that does not include Clause 11 of the note designated by Wells Fargo. Good asserts that he signed that version of the note. Good acknowledges that the purported paper note is not in the record and, upon request, offers to provide it to us. However, "Appellate review of summary judgment is limited to evidence designated to the trial court." Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012) (citing Ind. Trial Rule 56(H)). Thus, our review is limited to the copy of the note designated by Wells Fargo.

[2] The Note's provisions for conversion from an electronic note to a paper-based note are not at issue here because Wells Fargo contends that it is entitled to enforce an electronic note.

> Electronic Note is later transferred will be recorded in a registry maintained by <u>MERSCORP, Inc., a Delaware corporation</u> or in another registry to which the records are later transferred (the "Note Holder Registry"). The authoritative copy of this Electronic Note will be the copy identified by the Note Holder after loan closing but prior to registration in the Note Holder Registry. If this Electronic Note has been registered in the Note Holder Registry, then the authoritative copy will be the copy identified by the Note Holder of record in the Note Holder Registry or the Loan Servicer (as defined in the Security Instrument) acting at the direction of the Note Holder, as the authoritative copy. The current identity of the Note Holder and the location of the authoritative copy, as reflected in the Note Holder Registry, will be available from the Note Holder or Loan Servicer, as applicable. <u>The only copy of this Electric Note that is the authoritative copy is the copy that is within the control of the person identified as the Note Holder in the Note Holder Registry (or that person's designee). No other copy of this Electronic Note may be the authoritative copy</u>. . . .

Appellee's App. p. 29 (emphasis added). The loan was secured by a mortgage. The mortgage identified Synergy as the lender and Mortgage Electronic Registration Systems, Inc., ("MERS") as a nominee for the lender.

In 2011, Good stopped making payments on the loan. On November 9, 2011, MERS, as nominee for Synergy, assigned the mortgage to Wells Fargo. This assignment was recorded on November 14, 2011.

On November 7, 2012, Wells Fargo filed a complaint to foreclose the mortgage. Good, acting pro-se, filed an answer alleging that Wells Fargo was not a holder in due course of the Note and that it lacked standing.

On April 5, 2013, Wells Fargo moved for summary judgment. In support of its motion, Wells Fargo designated an Affidavit in Support of Judgment ("the Affidavit") in

3

which Shemeka Moye, Wells Fargo's Vice President of Loan Documentation, stated Wells Fargo, "directly or through an agent, has possession of the Promissory Note at issue in the plaintiff's cause of action. Wells Fargo Bank, N.A., is either the original payee of the Promissory Note or the Promissory Note has been duly indorsed [sic]." Id. at 95. Good responded, arguing that Wells Fargo held only a photocopy of the Note without any endorsements and, without more, did not establish that it was entitled to enforce the Note.

Wells Fargo replied claiming Good failed to designate evidence that creates a genuine issues of material fact for trial. Wells Fargo also asserted that it controlled the electronic note and was entitled to enforce it as the holder pursuant to 15 U.S.C.A. § 7021(d). In support of this argument, Wells Fargo relied on a Certificate of Authentication ("the Certificate") in which Assistant Vice President of Wells Fargo, Thresa Russell, stated:

> 1. . . . . The Bank acts as a servicer for the Federal National Mortgage Association ("Fannie Mae") with respect to the residential mortgage loan executed on the [sic] 3/14/2008 by BRYAN GOOD, ("Borrowers") . . . . The promissory note evidencing the Borrowers' obligation to repay the Loan is an electronic record, as authorized by the federal ESIGN Act, 15 USC §7001 et seq., and in particular 15 USC §7021.
>
> 2. As part of its function as servicer, the Bank maintains a copy of the Borrowers' electronic promissory note on behalf of Fannie Mae. I am responsibilities [sic] for overseeing the process by which the Bank maintains the electronic promissory notes evidencing residential mortgage loans. ("Electronic Records").

4

3. Each Electronic Record is received in accordance with established procedures and processes for reliable receipt, storage and management of Electronic Records (the "Electronic Record Procedures"). The Electronic Record Procedures provide controls to assure that each Electronic Record is accurately received as originally executed and transmitted, and indexed appropriately for later identification and retrieval. Each Electronic Record is protected against undetected alteration by industry-standard encryption techniques and system controls. The Electronic Record is an official record of the Bank and is readily accessible for later reference.

4. Each Electronic Record is maintained and stored by the Bank in the ordinary course of business. The Electronic Records are maintained and stored by the Bank continuously from the time of receipt.

5. The paper copy of the Electronic Record attached . . . is a true and correct copy of the Borrowers' promissory note described above, as maintained and stored by the Bank in accordance with the procedures in Paragraphs 3 and 4 of this Certificate.

Id. at 130.

After a hearing, the trial court concluded that Wells Fargo had standing to enforce the Note and mortgage and partially granted Wells Fargo's motion for summary judgment as to that issue. The trial court also concluded that there were genuine issues of material fact regarding the validity of Good's electronic signature on the Note and the amount due and owing on the Note. Both parties filed motions to reconsider, which were discussed at the September 16, 2013 bench trial on the unresolved issues. After the trial, the trial court reaffirmed its initial ruling on the motion for summary judgment and concluded in part:

5

11.    Plaintiff Wells Fargo Bank presented attached to the copy of the Promissory Note in its control a Certificate of Authentication which affirms that the Promissory Note was accurately received as it was originally executed and transmitted electronically. Plaintiff also affirmed that the record was protected against undetected alteration by industry standard encryption techniques and system controls. In this respect, the court concludes that Plaintiff maintained control of the subject Promissory Note which was originally signed by the Defendant, Bryan Good. Further endorsement of an electronic promissory note is not required and the promissory note is self-authenticating pursuant to Ind. Rule of Evidence 902. Accordingly, Defendant is liable on the Promissory Note and related Mortgage.

Appellant's App. p. 134. The trial court determined the payoff amount and entered judgment for Wells Fargo in that amount. The trial court then issued a judgment of foreclosure. Good now appeals.

**Analysis**

Among other things, Good appeals the trial court's entry of partial summary judgment on the issue of whether Wells Fargo was entitled to enforce the Note. "We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. Id. (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence

6

designated by the parties is construed in a light most favorable to the non-moving party, and we do not defer to the trial court's legal determinations. Id.

There is no dispute that the mortgage was assigned from Synergy to Wells Fargo in 2011. The issue is whether Wells Fargo was entitled to enforce the Note. Regarding traditional paper notes, "Indiana has adopted Article 3 of the Uniform Commercial Code (UCC), which governs negotiable instruments, and it is well-established that a promissory note secured by a mortgage is a negotiable instrument." Lunsford v. Deutsche Bank Trust Co. Americas as Tr., 996 N.E.2d 815, 821 (Ind. Ct. App. 2013). According to the UCC, a negotiable instrument may be enforced by "the holder of the instrument." Ind. Code § 26-1-3.1-301(1). The term "holder" means "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument[.]" I.C. § 26-1-1-201(20). In this context, "bearer" means the person in possession of a negotiable instrument "payable to bearer or endorsed in blank." I.C. § 26-1-1-201(5).

Wells Fargo initially asserted that it had possession of the Note and was either the original payee or the Note had been duly endorsed. Good responded, challenging Wells Fargo's status as holder because the Note designated by Wells Fargo was not endorsed. In its reply, Wells Fargo asserted that, because the Note was an electronic note, "delivery, possession, and endorsement of an electronic promissory note are not required pursuant to federal statute." Appellee's App. p. 91. Wells Fargo claimed it controlled the Note and was entitled to enforce it pursuant to 15 U.S.C. § 7021, which provides:

(a) Definitions

7

For purposes of this section:

> (1) Transferable record
> The term "transferable record" means an electronic record that—
>
>> (A) would be a note under Article 3 of the Uniform Commercial Code if the electronic record were in writing;
>>
>> (B) the issuer of the electronic record expressly has agreed is a transferable record; and
>>
>> (C) relates to a loan secured by real property.
>
> A transferable record may be executed using an electronic signature.
>
> (2) Other definitions
> The terms "electronic record", "electronic signature", and "person" have the same meanings provided in section 7006 of this title.

(b) Control
A person has control of a transferable record if a system employed for evidencing the transfer of interests in the transferable record reliably establishes that person as the person to which the transferable record was issued or transferred.

(c) Conditions
A system satisfies subsection (b) of this section, and a person is deemed to have control of a transferable record, if the transferable record is created, stored, and assigned in such a manner that—

> (1) a single authoritative copy of the transferable record exists which is unique, identifiable, and, except as otherwise provided in paragraphs (4), (5), and (6), unalterable;
>
> (2) the authoritative copy identifies the person asserting control as—

(A) the person to which the transferable record was issued; or

(B) if the authoritative copy indicates that the transferable record has been transferred, the person to which the transferable record was most recently transferred;

(3) the authoritative copy is communicated to and maintained by the person asserting control or its designated custodian;

(4) copies or revisions that add or change an identified assignee of the authoritative copy can be made only with the consent of the person asserting control;

(5) each copy of the authoritative copy and any copy of a copy is readily identifiable as a copy that is not the authoritative copy; and

(6) any revision of the authoritative copy is readily identifiable as authorized or unauthorized.

(d) Status as holder
Except as otherwise agreed, a person having control of a transferable record is the holder, as defined in section 1-201(20) of the Uniform Commercial Code, of the transferable record and has the same rights and defenses as a holder of an equivalent record or writing under the Uniform Commercial Code, including, if the applicable statutory requirements under section 3-302(a), 9-308, or revised section 9-330 of the Uniform Commercial Code are satisfied, the rights and defenses of a holder in due course or a purchaser, respectively. Delivery, possession, and endorsement are not required to obtain or exercise any of the rights under this subsection.

(e) Obligor rights
Except as otherwise agreed, an obligor under a transferable record has the same rights and defenses as an equivalent obligor under equivalent records or writings under the Uniform Commercial Code.

(f) Proof of control
If requested by a person against which enforcement is sought, the person seeking to enforce the transferable record shall provide reasonable proof that the person is in control of the transferable record.  Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record.

(g) UCC references
For purposes of this subsection, all references to the Uniform Commercial Code are to the Uniform Commercial Code as in effect in the jurisdiction the law of which governs the transferable record.

15 U.S.C. § 7021 (emphases added).

Wells Fargo is correct that, pursuant to §7021(d), a person having control of a transferable record, which includes the Note, is the holder for purposes of the UCC and that delivery, possession, and endorsement are not required.  According to §7021(b), to show it controlled the note, Wells Fargo was required to designate evidence that a system employed for evidencing the transfer of interests in the Note reliably established Wells Fargo as the person to whom the Note was transferred.  A system that satisfies the control requirement is described in §7021(c).  Wells Fargo contends that its "possession of the Note and the recitation of its electronic record keeping procedures in the Certificate evidences Well Fargo's control of the Note . . . ."[3]  Appellee's Br. p. 15.  We disagree.

---

[3]  In the argument section of its brief, Wells Fargo claims it acquired the Note for servicing in August 2008.  This claim appears to be based on testimony offered during the trial and is not appropriate for consideration of whether partial summary judgment was proper.

10

Regarding possession, the Affidavit, which does not mention an electronic note, provides only that that Wells Fargo, directly or through an agent, "has possession of the Promissory Note at issue in the plaintiff's cause of action." Appellee's App. p. 95. When considering Wells Fargo's assertion that the note in its possession was endorsed and its argument that the endorsement of an electronic note is not required pursuant to §7021(d), it is not clear from the Affidavit whether Wells Fargo was claiming to have possession of an endorsed paper copy or the electronic note.[4]

Even if the Affidavit established that Wells Fargo possessed the electronic note, control, not possession, is the relevant consideration under §7021, and the Certificate does not establish that Wells Fargo controlled the Note. The Certificate does establish that Wells Fargo, as servicer of Good's mortgage loan for Fannie Mae, "maintains a copy of [Good's] promissory note on behalf of Fannie Mae." Id. at 26. The Certificate also establishes that Wells Fargo's electronic records are received, stored, and managed in a secure manner with controls to assure they are accurately received as originally executed and protected against alteration. However, the Certificate does not suggest that Wells Fargo maintains the single authoritative copy of the Note as described in §7021(c)(1). Even if we were to assume that the copy of the Note maintained by Wells Fargo is the authoritative copy, it does not indicate that the Note has been transferred or identify either Wells Fargo or Fannie Mae as the person to whom the Note was most recently transferred. See 15 U.S.C. §7021(c)(2)(B).

---

[4] There is no claim that Wells Fargo is the original payee as alternatively asserted in the Affidavit.

Such a record of transfer is described in the Note, which calls for the recording of any transfer of the Note in a note holder registry. The Note also specifies, "The only copy of this Electric Note that is the authoritative copy is the copy that is within the control of the person identified as the Note Holder in the Note Holder Registry (or that person's designee). No other copy of this Electronic Note may be the authoritative copy." Id. at 29. Wells Fargo has not designated any evidence of a note holder registry, let alone evidence showing that Wells Fargo, or even Fannie Mae, is identified as the note holder in the note holder registry.

Pursuant to statute, upon Good's request, Wells Fargo was required to provide "reasonable proof" that it was in control of the Note. 15 U.S.C. §7021(f). "Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record." Id. Although Good repeatedly requested such proof, Wells Fargo did not provide any evidence documenting the transfer or assignment of the Note from Synergy to either Wells Fargo or Fannie Mae. Thus, Wells Fargo did not demonstrate it controlled the Note by showing that a system employed for evidencing the transfer of interests in the Note reliably established that the Note had been transferred to Wells Fargo. See 15 U.S.C. §7021(b).

Because Wells Fargo did not establish that it controlled the Note as described in §7021, it did not establish that it was the person entitled to enforce the Note as the holder for purposes of the UCC. See 15 U.S.C. §7021(d); I.C. § 26-1-3.1-301(1). Thus, partial summary judgment for Wells Fargo on this issue was improper.

12

Wells Fargo goes on to argue that, irrespective of the trial court's summary judgment ruling, it presented uncontroverted evidence at the bench trial that it controlled the Note. Procedurally, however, the issue of Wells Fargo's right to enforce the Note was not before the trial court during the bench trial because it had been resolved, albeit improperly, in the summary judgment proceedings. It would be inappropriate for us to use evidence from the subsequent trial to justify the judgment when Good did not have notice that this issue would be relitigated. Regardless, we are not convinced that the trial testimony establishes that Wells Fargo controlled the Note for purposes of §7021.

Wells Fargo relies on the testimony of Donna Mouzon, a loan verification analyst for Wells Fargo, who testified at trial that Wells Fargo "acquired" the loan on August 1, 2008. Tr. pp. 17-18. Mouzon was also questioned as follows:

> Q. Thank you. Is [Wells Fargo] presently in control of the electronic note?
>
> A. Yes.
>
> Q. Does [Wells Fargo] currently maintain the electronic note?
>
> A. Yes.
>
> Q. Does [Wells Fargo] also service the loan?
>
> A. Yes.
>
> * * * * *
>
> Q. Who's the owner of the note?
>
> A. Fanny Mae.
>
> Q. Who's the holder of the note?

13

> A. Wells Fargo.

Id. at 18.

Given the lack of evidence regarding a transfer or assignment from Synergy to Wells Fargo or Fannie Mae, Mouzon's conclusory testimony was not sufficient to establish that it controlled the Note as defined in §7021. Thus, Mouzon's trial testimony did not establish that Wells Fargo is entitled to enforce the note as the holder, and is not a basis for affirming the judgment of foreclosure.

**Conclusion**

Wells Fargo has not shown that it controls the Note for purposes of §7021(b) and, accordingly, has not established its status as holder for purposes of the UCC. Because Wells Fargo has not established that it was entitled to enforce the Note as its holder, the trial court's grant of summary judgment was improper and the resulting judgment must be set aside. We reverse and remand.

Reversed and remanded.

BRADFORD, J., and BROWN, J., concur.

14